IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| UNITED CHURCH OF CHRIST MEDIA JUSTICE MINISTRY, INC., <br><br> *Petitioner*, <br><br> v. <br><br> FEDERAL COMMUNICATIONS COMMISSION and UNITED STATES, <br><br> *Respondents*. | No. 25-1280 (consolidated with 26-1001, 26-1002, 26-1003, 26-1012) |

**MOTION TO TRANSFER TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

Pursuant to 28 U.S.C. § 2112(a)(5), Petitioner Direct Action for Rights and Equality ("DARE") respectfully moves to transfer these consolidated cases to the United States Court of Appeals for the First Circuit. These cases challenge a 2025 order of the Federal Communications Commission ("FCC" or the "Commission") modifying rate caps for incarcerated people's communications services ("IPCS") pursuant to the Martha Wright-Reed Just and Reasonable Communications Act of 2022, Pub. L. No. 117-338, 136 Stat. 6156 (2023) ("MWRA" or the "Act").[1] But

---

[1] *See In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, and Further

challenges to the Commission's prior 2024 order—which comprehensively implemented the Act and established the Commission's underlying rate-setting framework—remain pending in the First Circuit.[2] The First Circuit has already received merits briefing from nearly all of the same parties regarding the 2024 Order; conducted oral argument; issued a published opinion concluding that venue is proper in the First Circuit and noting that court's unique "familiar[ity]" with recent challenges to IPCS, *see In re MCP 191*, 158 F.4th 294, 303 (1st Cir. 2025); and set a supplemental briefing schedule for the parties to "address[] whether the adoption of the FCC's new order governing [IPCS] … moots any issues on appeal and whether and how that order otherwise bears on those issues," Order, *In re MCP 191*, No. 24-8028 (1st Cir. Dec. 11, 2025). In these circumstances, transfer to the First Circuit best serves the "convenience of the parties in the interest of justice." 28 U.S.C. § 2112(a)(5).

DARE has conferred with counsel for all parties. The other Public Interest Petitioners (the United Church of Christ Media Justice Ministry, Inc., the Pennsylvania Prison Society, and the Criminal Justice Reform Clinic) support the

---

Notice of Proposed Rulemaking, WC Docket Nos. 23-62 & 12-375, FCC 25-75 (rel. Nov. 6, 2025) ("2025 Order and Order on Reconsideration").

[2] *See In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, 39 FCC Rcd 7647 (2024) ("2024 Order").

2

motion to transfer.  Petitioner Network Communications International Corporation ("NCIC") opposes the motion to transfer.  Respondents FCC and the United States take no position.

## BACKGROUND

For decades, incarcerated individuals and their loved ones have paid exorbitant prices for IPCS due to profound market failures that eliminate any meaningful competitive pressure for IPCS providers to reduce costs at the facilities they serve.  *See, e.g.*, 2024 Order, 39 FCC Rcd at 7850 ¶ 382.  In 2023, Congress took action to address these market failures by enacting the MWRA and conferring expanded statutory authority on the Commission to set "just and reasonable" IPCS rates.  MWRA § 2(a)(1)(B).[3]  The MWRA also directed the Commission to "consider costs associated with any safety and security measures" that are "necessary to provide" IPCS.  *Id.* § 3(b)(2).  Recognizing the urgent need for meaningful reform, Congress further directed the Commission to promulgate rules necessary to implement the Act within 24 months.  *Id.* § 3(a).

On July 22, 2024, the Commission implemented the Act by releasing the 2024 Order.  The 2024 Order made sweeping changes to the IPCS market and adopted significantly lower rate caps for incarcerated people and their loved ones.  Among

---

[3] In so doing, Congress substantially revised the statute to address gaps in the Commission's statutory authority identified by this Court in *Global Tel*Link v. FCC*, 866 F.3d 397 (D.C. Cir. 2017).

3

other reforms, the 2024 Order concluded that the Commission's new authority to set "just and reasonable" rates meant that the Commission should determine which costs may be included in the rate caps based on whether they are "used and useful" in the provision of IPCS.  2024 Order, 39 FCC Rcd at 7671 ¶ 41.  Pursuant to that "used and useful" framework, the 2024 Order concluded that five out of seven categories of "safety and security" costs that IPCS providers sought to include in the rate caps should be excluded, *id.* at 7854-66 ¶¶ 390-407; declined to include a $0.02 additive for "facility costs" purportedly incurred by prisons and jails in providing IPCS, *id.* at 7745-46 ¶¶ 179-180; and prohibited providers from recovering the cost of "site commissions" they paid to prisons and jails to win monopoly contracts, *id.* at 7792-801 ¶¶ 270-288.

Multiple parties, including DARE, the Pennsylvania Prison Society, and the Criminal Justice Reform Clinic—all of whom are petitioners here—as well as IPCS providers and several states and sheriffs, filed petitions for review of the 2024 Order. Those petitions were consolidated in the First Circuit following a judicial lottery. Consolidation Order, *In re FCC, Incarcerated People's Commc'ns Servs., Implementation of the Martha Wright-Reed Act, FCC 24-75, Released July 22, 2024, 89 Fed. Reg. 68,369, Published on Aug. 26, 2024*, MCP No. 191 (J.P.M.L. Sept. 18, 2024), Dkt. No. 3.  The parties then fully briefed both the merits and certain jurisdictional and venue issues arising from the lottery.  Before the First Circuit, the

4

Commission filed a brief following the change in presidential administration that defended the 2024 Order in its entirety, only to inform the First Circuit shortly before oral argument that it intended to revisit the rate caps in a new order. *See, e.g.*, Motion of Respondent FCC to Postpone Oral Argument, *In re MCP 191*, No. 24-8028 (1st Cir. Sept. 4, 2025). The First Circuit denied the motion and held oral argument on October 7, 2025, and, within weeks, issued a published opinion concluding that venue was proper in the First Circuit. *In re MCP 191*, 158 F.4th 294 (1st Cir. 2025). The First Circuit explained that it acted quickly to resolve venue because it recognized that the "agency may soon enter a new order addressing the provision of IPCS," and it therefore "[thought] it sensible to resolve now the contentions about whether this Court is the proper one to address the petitions at hand." *Id.* at 298. The court otherwise held the petitions in abeyance. *Id.*

On October 28, 2025, the FCC adopted the 2025 Order and Order on Reconsideration. That order was publicly released on November 6, 2025, and then published in the Federal Register on December 5, 2025. Incarcerated People's Communication Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services, 90 Fed. Reg. 56,013 (Dec. 5, 2025). The 2025 Order and Order on Reconsideration appears in the same FCC dockets as the 2024 Order, leaves unchanged certain aspects of the 2024 Order, and otherwise reconsiders certain aspects of the 2024 Order in order to increase substantially the

5

rate caps previously adopted. For instance, the 2025 Order and Order on Reconsideration preserves the 2024 Order's prohibition on site commissions. *See, e.g.*, 2025 Order and Order on Reconsideration ¶ 44. However, whereas the 2024 Order excluded five out of seven "safety and security" costs from the original rate caps as not being "used and useful," 2024 Order, 39 FCC Rcd at 7854-66 ¶¶ 390-407, the 2025 Order permits the recovery of all seven categories in the revised rate caps, 2025 Order and Order on Reconsideration ¶ 29; and whereas the 2024 Order did not adopt an additive for facility costs, 2024 Order, 39 FCC Rcd at 7745-46 ¶¶ 179-180, the 2025 Order and Order on Reconsideration adopts an across-the-board $0.02 per minute additive to rates for such costs, 2025 Order and Order on Reconsideration ¶ 37.

Five petitioners filed petitions challenging the 2025 Order and Order on Reconsideration in five different circuits. *See Direct Action for Rights & Equality v. FCC*, No. 25-02192 (1st Cir. filed Dec. 11, 2025); *Pa. Prison Soc'y v. FCC*, No. 25-03431 (3d Cir. filed Dec. 10, 2025); *Network Commc'ns Int'l Corp. v. FCC*, No. 25-60695 (5th Cir. filed Dec. 12, 2025); *Crim. Justice Reform Clinic v. FCC*, No. 25-07792 (9th Cir. filed Dec. 11, 2025); *United Church of Christ Media Justice Ministry v. FCC*, No. 25-01280 (D.C. Cir. filed Dec. 11, 2025). On December 23, 2025, the FCC referred these matters to the Judicial Panel on Multidistrict Litigation ("JPML"). *See* FCC Notice of Multicircuit Petitions for Review, *Direct Action for*

*Rights & Equality v. FCC*, No. 25-02192 (1st Cir. Dec. 23, 2025). On December 30, 2025, the JPML announced that it had randomly selected this Court to hear challenges to the 2025 Order and Order on Reconsideration. *See* FCC Letter Regarding Judicial Panel on Multidistrict Litigation Consolidation Order, *Direct Action for Rights & Equality v. FCC*, No. 25-02192 (1st Cir. Dec. 30, 2025). The petitions have now been consolidated in this Court.

Meanwhile, on December 11, 2025, the First Circuit set a supplemental briefing schedule for the parties to "address[] whether the adoption of the FCC's new order governing [IPCS], which was published on December 5, 2025, moots any issues on appeal and whether and how that order otherwise bears on those issues." Order, *In re MCP 191*, No. 24-8028 (1st Cir. Dec. 11, 2025). Briefing on those questions is scheduled to conclude in April 2026.

## ARGUMENT

This Court should exercise its discretion to transfer these consolidated cases to the First Circuit. Under 28 U.S.C. § 2112(a)(5), this Court may "transfer all the proceedings with respect to" the 2025 Order and Order on Reconsideration "to any other court of appeals" if such transfer serves the "convenience of the parties in the interests of justice." 28 U.S.C. § 2112(a)(5). This Court has also recognized that a "court of appeals having venue may exercise an inherent discretionary power to transfer [a] proceeding to another circuit in the interest of justice and sound judicial

7

administration." *E. Air Lines, Inc. v. CAB*, 354 F.2d 507, 510 (D.C. Cir. 1965). Pursuant to these authorities, this Court should transfer the consolidated cases to the First Circuit.

*First*, transfer to the First Circuit is warranted given the close relationship between the 2024 and 2025 orders, as well as the overlapping nature of the issues raised in both sets of cases. This Court has held that "'where the same or inter-related proceeding was previously under review in a court of appeals, and is now brought for review of an order entered after remand, or in a follow-on phase,'" the "desirability of 'continuity in the total proceeding' calls strongly for handling by the same reviewing tribunal." *Am. Pub. Gas Ass'n v. FPC*, 555 F.2d 852, 857 (D.C. Cir. 1976) (per curiam) (quoting *Pub. Serv. Comm'n of N.Y. v. FPC*, 472 F.2d 1270, 1272 (D.C. Cir. 1972)). That standard is satisfied here, where the 2025 Order and Order on Reconsideration reconsiders portions of the 2024 Order, appears in the same FCC dockets, and relies on essentially the same administrative record.[4]

Moreover, the substantive issues likely to arise here are not easily separated from the issues already raised in the First Circuit. This Court has previously granted

---

[4] Indeed, at oral argument in the First Circuit, counsel for IPCS provider Securus explained that "if this court keeps this case, petitions for review of the next order on reconsideration are going to be treated [as] the same order. They're all coming here." Oral Argument at 24:36-43, *In re MCP 191*, No. 24-8028 (1st Cir. Oct. 7, 2025), https://www.courtlistener.com/audio/100688/inre-mcp-191/?type=oa&type=oa&q=MCP+191&order_by=score+desc.

8

a transfer request where an earlier "First Report and Order" was "the precursor of the present proceedings and which perforce involves many of the same issues." *Midwest Television, Inc. v. FCC*, 364 F.2d 674, 675 (D.C. Cir. 1966); *see also United Steelworkers of Am., AFL-CIO CLC v. Marshall*, 592 F.2d 693, 698 (3d Cir. 1979) (recognizing the "strong institutional interest in having" a single forum consider "issues … similar to those raised" in the other circuit); Order at 3, *Howard Stirk Holdings, LLC v. FCC*, No. 14-1090 (D.C. Cir. Nov. 24, 2015) (Statement of Williams, J.) (recognizing that where all "issues presented … are either closely or tangentially linked to" a proceeding in another circuit, there are "clear economy advantages in transfer to that circuit"). Here, the Commission's reliance on a "used and useful" rate-setting framework under the Act; its assessment of safety and security costs under that framework; its treatment of facility costs; and its prohibition against site commissions are likely to be raised in these consolidated cases and have already been raised by the parties in the First Circuit.

*Second*, transfer is particularly warranted here because the challenges to the 2024 Order remain pending and under active consideration in the First Circuit. The "public policy underlying section 2112(a) requires that it 'be liberally applied to permit review by a single court of closely related matters where appropriate for sound judicial administration.'" *ACLU v. FCC*, 486 F.2d 411, 414 (D.C. Cir. 1973) (quoting *E. Air Lines*, 354 F.2d at 511). Here, parallel briefing in this Court about

9

the lawfulness and reasonableness of the Commission's recent actions to implement the Act would necessarily duplicate what the First Circuit has already set in motion by requesting supplemental briefing regarding the 2025 Order and Order on Reconsideration, and it would risk precisely the kind of conflicting judgments that inter-circuit transfer is intended to avoid. *See, e.g.*, *ACLU*, 486 F.2d at 414 (recognizing the importance of avoiding "fragmentary review by different courts").[5]

*Third*, transfer is warranted given the First Circuit's unique familiarity with the MWRA and the complex rate-setting framework the Commission adopted to implement that Act. "[O]ne factor that has considerable weight in the guidance of judicial discretion is the desirability of transfer to a circuit whose judges are familiar with the background of the controversy through review of the same or related proceedings." *E. Air Lines, Inc.*, 354 F.2d at 510. Here, the First Circuit possesses the requisite familiarity: the court has squarely stated that it has "necessarily become familiar with these petitions," and "no other court … has had reason to become similarly familiar with them." *In re MCP 191*, 158 F.4th at 303 (citations omitted). Over the past 16 months, the First Circuit has decided several procedural motions; received full merits briefing from the parties; conducted a lengthy oral argument

---

[5] There is no reasonable possibility that the cases pending before the First Circuit will be entirely mooted by the Commission's latest action. *See, e.g.*, FCC Letter, *In re MCP 191*, No. 24-8028 (1st Cir. Nov. 6, 2025) (arguing only that certain issues have been mooted by the 2025 Order and Order on Reconsideration).

10

lasting more than two hours encompassing several merits issues likely to recur in these cases; issued a published opinion regarding venue in anticipation of the challenges now consolidated here; and ordered further briefing regarding the effect of the 2025 Order and Order on Reconsideration. By contrast, though this Court is of course expert in the resolution of the administrative-law issues generally posed in this case, it has had no occasion to consider Congress' new statutory scheme governing IPCS.

*Fourth*, transfer to the First Circuit would also serve the convenience of the parties. *See Liquor Salesmen's Union Local 2 v. NLRB*, 664 F.2d 1200, 1205 (D.C. Cir. 1981) (identifying various factors, including "whether one circuit is more familiar with the same parties and issues or related issues than other courts").[6] The First Circuit has nearly all of the same entities before it, including DARE, the Pennsylvania Prison Society, the Criminal Justice Reform Clinic, the United Church of Christ Media Justice Ministry, the Commission, and the United States (as well as movant-intervenors Securus Technologies, LLC, and the National Sheriffs' Association). Those parties would all benefit from proceeding in a single court, where briefing could be simplified based on the First Circuit's existing familiarity

---

[6] *Liquor Salesmen's* also identifies the "location of counsel, location of the parties, whether the impact of the litigation is local to one region, … the caseloads of the respective courts, and whether there is but one truly aggrieved party." 664 F.2d at 1205. The location-based considerations are less significant today given modern technology, and the other considerations do not significantly favor either court.

11

with the MWRA and the series of recent Commission actions to implement the statute.

In short, given the overlapping issues and parties at play in both cases, as well as the First Circuit's active consideration of the Commission's efforts to regulate the IPCS market, transfer to the First Circuit would best serve the "convenience of the parties in the interest of justice." 28 U.S.C. § 2112(a)(5).

## CONCLUSION

For the foregoing reasons, this Court should transfer these consolidated cases to the First Circuit.

Dated: January 27, 2026

Respectfully submitted,

*/s/ Jessica Ring Amunson*
Jessica Ring Amunson
Arjun R. Ramamurti
Ruby C. Giaquinto
Kevin A. Zhang
Jenner & Block LLP
1099 New York Ave, N.W. Suite 900
Washington, D.C. 20001
(202) 639-6000
jamunson@jenner.com
aramamurti@jenner.com
rgiaquinto@jenner.com
kzhang@jenner.com

*Counsel for Direct Action for Rights and Equality*

## CERTIFICATE OF COMPLIANCE

Under Rules 27(d)(2)(A) and 32(g) of the Federal Rules of Appellate Procedure, I certify this motion complies with the length limits set forth Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,724 words, as counted by Microsoft Word, excluding the items that may be exempted under Federal Rule of Appellate Procedure 27(a)(2)(B).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman font.

Dated: January 27, 2026    */s/ Jessica Ring Amunson*
                           Jessica Ring Amunson

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| UNITED CHURCH OF CHRIST MEDIA JUSTICE MINISTRY, INC.,<br><br>*Petitioner*,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION and UNITED STATES,<br><br>*Respondents*. | No. 25-1280 (consolidated with 26-1001, 26-1002, 26-1003, 26-1012) |

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rules 27(a)(4), DARE submits the following Certificate of Parties, Rulings, and Related Cases.

1. **Parties**

   a. **Petitioners**

The petitioner in Case No. 25-1280 is the United Church of Christ Media Justice Ministry, Inc. The petitioner in Case No. 26-1001 is Direct Action for Rights and Equality. The petitioner in Case No. 26-1002 is Pennsylvania Prison Society. The petitioner in Case No. 26-1003 is Network Communications International Corporation. The petitioner in Case No. 26-1012 is Criminal Justice Reform Clinic.

14

**b. Respondents**

The respondents in each case are the Federal Communications Commission and the United States of America.

**c. Intervenors**

Securus Technologies, LLC; Direct Action for Rights and Equality; Pennsylvania Prison Society; United Church of Christ Media Justice Ministry, Inc.; and the National Sheriffs' Association have all filed motions to intervene.

**d. *Amici***

None at present.

**2. Rulings Under Review**

Petitioners seek review of the following order issued by the Federal Communications Commission: *In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, and Further Notice of Proposed Rulemaking, WC Docket Nos. 23-62 & 12-375, FCC 25-75 (rel. Nov. 6, 2025).

**3. Related Cases**

Direct Action for Rights and Equality, Pennsylvania Prison Society, and Criminal Justice Reform Clinic have also sought review of a related order, *In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, Clarification and

Waiver, and Further Notice of Proposed Rulemaking, 39 FCC Rcd 7647 (2024), and those challenges have been consolidated and remain pending in the First Circuit. *See In re MCP 191*, No. 24-8028 (1st Cir.).

Dated: January 27, 2026                     */s/ Jessica Ring Amunson*
                                            Jessica Ring Amunson

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| UNITED CHURCH OF CHRIST MEDIA JUSTICE MINISTRY, INC., <br><br> *Petitioner*, <br><br> v. <br><br> FEDERAL COMMUNICATIONS COMMISSION and UNITED STATES, <br><br> *Respondents*. | No. 25-1280 (consolidated with 26-1001, 26-1002, 26-1003, 26-1012) |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 27(a)(4), Direct Action for Rights and Equality makes the following disclosures:

1. Direct Action for Rights and Equality is a section 501(c)(3) non-profit organization headquartered in Providence, Rhode Island.

2. There is no corporation that owns 10% or more of DARE's stock.

Dated: January 27, 2026                    */s/ Jessica Ring Amunson*
                                           Jessica Ring Amunson

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 27, 2026                   */s/ Jessica Ring Amunson*
                                          Jessica Ring Amunson