# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United Church of Christ Media Justice Ministry, Inc., | ) ) ) | No. 25-1280 |
| Petitioner, | ) ) | Consolidated with: No. 26-1001 |
| v. | ) ) | No. 26-1002 No. 26-1003 |
| Federal Communications Commission and United States of America, | ) ) ) ) ) | No. 26-1012 |
| Respondents. | ) | |

## OPPOSITION TO
## PETITIONER'S MOTION TO TRANSFER

Pursuant to Rule 27(a)(3)(A) of the Federal Rules of Appellate Procedure, Petitioner Network Communications International Corporation ("NCIC") respectfully responds to the Motion to Transfer to the United States Court of Appeals for the First Circuit filed by Petitioner Direct Action for Rights and Equality ("DARE") on January 17, 2026 (the "Transfer Motion"). As discussed herein, NCIC opposes the Transfer Motion.

1

## BACKGROUND

A.  <u>The 2024 Order.</u>

On July 18, 2024, the Federal Communications Commission ("FCC") voted to modify its existing rules relating to the Incarcerated People's Communications Services ("IPCS") set forth in Subpart FF of Section 64 of the FCC's rules.[1]  The Order was released on July 22, 2024.  The revised rules were adopted to satisfy the requirements of the Martha Wright-Reed Just and Reasonable Communications Act of 2022, Pub. L. No. 117-338, 136 Stat. 6156 (2023) ("MWRA"). Several parties sought judicial review of the 2024 Order in different circuits. Pursuant to 28 U.S.C. 2112(a)(3), the judicial panel on multidistrict litigation held a lottery, and the parties' cases were consolidated in the United States Court of Appeals for the First Circuit. *See In re: MCP 191*, No. 24-8028 (1st Cir.).

NCIC did not seek review of the 2024 Order, electing instead to file a petition for reconsideration with the FCC pursuant to Section

---

[1]  *See In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, 39 FCC Rcd 7647 (2024) ("2024 Order"). *See also* 47 C.F.R. § 64.6000 *et seq.*

2

405(a) of the Communications Act of 1934, as amended, and Section 1.429 of the FCC's rules.[2] Because NCIC filed a petition for reconsideration of the 2024 Order, it did not (nor could it) participate as a party before the First Circuit.[3]

As DARE correctly notes, the First Circuit panel has already "received merits briefing" and "conducted oral argument." *Transfer Motion*, at pg. 2. The First Circuit also adopted a supplemental briefing schedule for the parties in the proceeding, which will not conclude until April 11, 2026. Order, *In re MCP 191*, No. 24-8028 (1st Cir. Dec. 11, 2025).

B. <u>The 2025 Order</u>

In June 2025, the FCC signaled that it had received evidence that the rules adopted in 2024 Order led to "implementation challenges and safety and security risks greatly exceeding those the Commission

---

[2]   *See* 47 U.S.C. § 405(a); 47 C.F.R. § 1.429.

[3]   *See Petition for Reconsideration of NCIC Correctional Services*, WC Docket Nos. 12-375, 23-62, filed Oct. 21, 2024 ("NCIC Petition"). *See also Clifton Power Corp. v. FERC*, 294 F.3d 108, 110–11 (D.C. Cir. 2002) (a petition for reconsideration "renders [the] agency's otherwise final action non-final with respect to the requesting party.").

envisioned in the 2024 IPCS Order."[4] As a result, the compliance deadlines adopted in the 2024 Order were postponed until April 1, 2027. Subsequently, the FCC released a draft Report and Order, Order on Reconsideration, and Further Notice of Proposed Rulemaking on October 7, 2025, wherein it announced it would vote to adopt new rules on October 28, 2025, that would "establish new interim audio and video IPCS rate caps and correctional facilities rate additives for correctional facility cost recovery."[5]

The 2025 Order adopted on October 28, 2025, fundamentally changed the rate-setting methodology used by the FCC to establish IPCS rate caps.[6] Further, the 2025 Order adopted new rules providing

---

[4] *Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act; Rates for Interstate Inmate Calling Services*, Order, 40 FCC Rcd 4309, 4311 (WCB 2025)

[5] *FCC Announces Tentative Agenda for October Open Meeting*, News Release, DOC-415066 (rel. Oct. 7, 2025).

[6] *See In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, and Further Notice of Proposed Rulemaking, WC Docket Nos. 12-375 and 23-62, FCC 25-75 (rel. Nov. 6, 2025) ("2025 Order").

for a $0.02 rate additive that could be collected by IPCS providers and paid to correctional facilities. *Id*

Prior to the adoption of the 2025 Order, the FCC alerted the First Circuit that the 2025 Order would moot issues currently on appeal and asked the court to hold the case in abeyance.[7] The court denied the motion.[8] The FCC then notified the First Circuit on October 3, 2025, that a draft 2025 Order had been circulated among the FCC commissioners which would "supersede significant portions of the order under review."[9]

After the 2025 Order was adopted, the FCC filed a letter with the court detailing the issues on appeal that had been mooted by the 2025

---

[7]   *See In re: MCP 191*, No. 24-8028, Motion of Respondent Federal Communications Commission to Postpone Oral Argument, Entry ID: 6748583 (filed Sept. 4, 2025).

[8]   *See In re: MCP 191*, No. 24-8028, Order, Entry ID: 6750896 (rel. Sept. 15, 2025).

[9]   *See In re: MCP 191*, No. 24-8028, Letter by Respondent Federal Communications Commission, Entry ID: 6755422 (filed Oct. 3, 2025) (noting the anticipated adoption of (i) new rate caps, (ii) a rate-setting methodology that does not include unbilled minutes and considers all reported safety and security costs, and (iii) a uniform additive of up to $0.02 for correctional facilities).

5

Order.[10] The court issued an order on December 11, 2025, directing all parties to the proceeding to file supplemental briefs, and then subsequently extended the filing dates (at the request of DARE) so that the briefing cycle now will end on April 11, 2026.[11]

## DISCUSSION

A. <u>NCIC Is Entitled to Judicial Review of 2025 Order Separate from the Potentially Mooted First Circuit Appeal.</u>

As noted, NCIC is not a party to the pending First Circuit proceeding. Instead, because it sought reconsideration of the 2024 Order, it could not submit a petition for review seeking appellate review.

In particular, NCIC's submission of a petition for reconsideration of the 2024 Order "render[ed] the underlying order nonfinal for purposes of judicial review…[and]…a party who has sought rehearing can not seek judicial review until the rehearing has concluded." *Stone v. I.N.S.*, 514 U.S. 386, 392 (1995). This court has found that "finality with

---

[10]   *See In re: MCP 191*, No. 24-8028, Letter by Respondent Federal Communications Commission, Entry ID: 6770453 (filed Dec. 5, 2025).

[11]   *See In re: MCP 191*, No. 24-8028, Order, Entry ID: 6771782 (rel. Dec. 11, 2025). *See also See In re: MCP 191*, No. 24-8028, Order, Entry ID: 6776215 (rel. Jan. 5, 2026).

6

respect to agency action is a party-based concept."[12] As such, NCIC is entitled to a full judicial review pursuant to 5 U.S.C. § 702.

DARE argues that because there is a pending appeal of the 2024 Order, NCIC's appeal of the 2025 Order necessarily must be transferred to the First Circuit. However, the pending appeal has already been fully briefed and the oral arguments on the merits were held in October 2025.

If this proceeding is transferred to the First Circuit, it would be fundamentally prejudicial to NCIC to have its statutory right to a full judicial review consolidated into a case that is nearing resolution (and may be mooted). If DARE is arguing instead that the First Circuit should initiate a separate proceeding, then it cannot reasonably argue that the two proceedings result from the "same order." 28 U.S.C. 2112(a)(5).

---

[12] *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489 (D.C. Cir. 1994) (citing *United Transportation Union*, 871 F.2d at 1114, 1118 (citing *West Penn Power Co. v. EPA*, 860 F.2d 581, 586 (3d Cir. 1988); *Wade v. FCC*, 986 F.2d 1433 (D.C. Cir. 1993); and *Winter v. ICC*, 851 F.2d 1056, 1062 (8th Cir. 1988)).

7

B. <u>Appeals of 2025 Order Involve Substantially Different Matters than the Appeals of the 2024 Order.</u>

DARE's primary argument is that the 2025 Order is the "same order" for purpose of 28 U.S.C. 2112(a)(5) because of its "close relationship" to the 2024 Order. *Transfer Motion* at pg. 8. In support, DARE cites *Midwest Television, Inc. v FCC* for support.[13] However, *Midwest Television* involved sequential orders wherein the second order broadened (but did not reconsider) the scope of the rules adopted in the first order.

DARE also relies on *ACLU v. FCC*,[14] to argue that "sound judicial administration" requires the transfer of closely related matters." *Transfer Motion* at pg. 9. However, this court in *ACLU* conditioned the requirement of a single court to review "closely related matters" to those cases <u>where appropriate</u>.[15] Here, the concerns expressed in *Midwest* and *ACLU* of a "fragmentary review" of the same order is misplaced: the First Circuit will decide the validity and continued relevance of the

---

[13]   364 F.2d 674, 675 (D.C. Cir. 1966).

[14]   486 F.2d 411, 414 (D.C. Cir. 1973)

[15]   *Id.*, 486 F.2d at 414 (emphasis added).

8

2024 Order, and this Court will decide the separate legality of the 2025 Order.

Further, while DARE argues that the 2024 Order was the "precursor" to the 2025 Order, it ignores the fact that the 2025 Order adopted a significantly different rate-setting methodology. Thus, rather than *Midwest's* consideration of the expansion of earlier-adopted rules to a larger portion of the cable television industry, the 2025 Order represents a significantly different approach taken by the FCC to establish just and reasonable IPCS rates.

Finally, DARE emphasizes that the 2025 and 2024 orders "appear[] in the same FCC dockets" and address overlapping issues such as "used and useful" costs, facility costs, and site commissions. *Transfer Motion*, at pgs. 8–9. But docket labels and conceptual overlap do not control the § 2112(a) analysis.

C.  Scope of 2024 Order Appeal Is Undetermined and Non-Final.

Additionally, because of the supplemental briefing schedule adopted by the First Circuit, transferring the 2025 Order would not serve the interests of justice. Inherent in the First Circuit's request for supplemental briefing is the understanding that the 2025 Order

9

involved a fundamentally different approach to regulating the IPCS industry. The First Circuit would have been better served by granting the FCC's request to hold that proceeding in abeyance, but DARE, the United Church of Christ Media Justice Ministry ("UCC"), and Pennsylvania Prison Society (all parties in this proceeding) opposed the FCC's request.[16]

> D. This Court Has Substantially Greater Experience in FCC and Administrative Matters in General, and IPCS Issues in Particular.

As *Public Service Commission* and *American Public Gas* explain, general "familiarity with the background of the present controversy" is not dispositive when evaluating what is in "the interest of justice'" under § 2112(a).[17]

The First Circuit's observation that it has "necessarily become familiar with these petitions" challenging the 2024 Order is thus not a

---

[16] *In re: MCP 191*, No. 24-8028, Entry ID: 6748856 (filed Sept. 5, 2025) ("Numerous motions have been filed and decided; the case is fully briefed; and the parties and the Court are already preparing for argument.").

[17] *See Pub. Serv. Comm'n of N.Y. v. FPC*, 472 F.2d 1270, 1272; *Am. Pub. Gas Ass'n v. FPC*, 555 F.2d 852, 857–58 & n.3 (D.C. Cir. 1976).

10

reason to override the assignment of the 2025 Order to this Court.[18] Every circuit is fully capable of interpreting statutes and reviewing administrative agency decisions. Were familiarity enough, the first court to hear a case in a new regulatory field could insist on perpetual jurisdiction over every subsequent rule and reconsideration order, a result this Court has warned against.[19]

Moreover, NCIC respectfully submits that the D.C. Circuit has substantially more experience in reviewing appeals of federal agency rulemaking orders. In fact, the D.C. Circuit reviewed the FCC's orders adopted between 2013 and 2017 in connection with earlier decisions in the IPCS proceeding.[20] In contrast, since 2020 the First Circuit has reviewed two substantive FCC appeals, one of which is the 2024 Order.[21]

---

[18] *In re: MCP 191*, 158 F.4th 294, 303 (1st Cir. 2025).

[19] *See Howard Stirk Holdings, LLC v. FCC*, No. 14-1090 (D.C. Cir. filed July 3, 2014).

[20] *See Global Tel*Link v. FCC*, 866 F.3d 397 (D.C. Cir. 2017). *See also Securus Techs. Inc. v. FCC,* No. 13-1280 (D.C. Cir. 2013); *See also Securus Techs. Inc. v. FCC*, No. 16-1321 (D.C. Cir. 2016).

[21] *See Mass. Dept. of Telecom. and Cable v. FCC*, No. 19-2282 (1st Cir. 2019).

11

E. The DC Circuit Would Serve the Convenience of the Parties.

The DC Circuit has extensive experience in reviewing administrative appeals of FCC orders. Further, other than the Criminal Justice Reform Clinic (CJRC), each of the parties to this proceeding are located in the Washington, D.C. area, including the FCC. Even with respect to the Criminal Justice Reform Clinic, it would appear that no prejudice would be imposed. In particular, CJRC joined the substantive pleadings submitted by DARE, UCC and the Pennsylvania Prison Society in the First Circuit proceeding.[22]

Thus, when considering the "convenience of the parties in the interest of justice", it clear that the motion to transfer of the instant proceeding should be rejected.[23] DARE cites to "modern technology" as a reason to discount *Liquor Salesman*'s focus on "location of counsel,

---

[22] *See, e.g., In re: MCP 191*, No. 24-8028, Intervenor's Brief Submitted by Intervenors Criminal Justice Reform Clinic, Direct Action for Rights and Equality, Inc., Office of Communication of the United Church of Christ, Inc., and Pennsylvania Prison Society, Entry ID. 6729951 (filed June 18, 2025).

[23] *See Liquor Salesman Union Local 2 v. NLRB*, 664 F.2d 1200, 1205 (D.C. Cir. 1981).

location of the parties, whether the impact of the litigation is local to one region, whether one circuit is more familiar with the same parties and issues or related issues than other courts." *Transfer Motion*, at pg. 11, nt. 6.

However, NCIC respectfully submits that if the majority of the parties in this proceeding are represented by counsel located in Washington, D.C., the FCC's headquarters is located in Washington, D.C., and the D.C. Circuit has extensive experience in reviewing FCC orders, the convenience of the parties in the interest of justice weighs substantially in favor of rejecting Petitioners' motion.

## CONCLUSION

For the foregoing reasons, this Court should deny DARE's motion to transfer.

Dated: February 6, 2026            Respectfully submitted,

**NETWORK COMMUNICATIONS INTERNATIONAL CORP., d/b/a NCIC CORRECTIONAL SERVICES**

/s/  Lee G. Petro
Glenn S. Richards, Bar Id. 39571
Phillip J. DeRosier, Bar Id. 66758
Lee G. Petro, Bar Id. 66766
DICKINSON WRIGHT PLLC
1825 Eye Street NW
Washington, D.C. 20006
Telephone: (202) 466-5961
Facsimile: (844) 670-6009
GRichards@Dickinson-Wright.com
PDeRosier@dickinson-wright.com
LPetro@Dickinson-Wright.com

# CERTIFICATE OF SERVICE

Pursuant to Rule 25(d) of the Federal Rules of Appellate Procedure, I hereby certify that, on February 6, 2026, I filed the foregoing document using this Court's Appellate CM/ECF system, which effected service on all parties.

February 6, 2026                          /s/  Lee G. Petro
                                          Lee G. Petro

# CERTIFICATE OF COMPLIANCE

Under Rules 27(d)(2)(A) and 32(g) of the Federal Rules of Appellate Procedure, I certify this motion complies with the length limits set forth Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,967 words, as counted by Microsoft Word, excluding the items that may be exempted under Federal Rule of Appellate Procedure 27(a)(2)(B).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Century Schoolbook font.

February 6, 2026                    /s/  Lee G. Petro
                                    Lee G. Petro

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United Church of Christ Media Justice Ministry, Inc., | ) ) ) | No. 25-1280 |
| Petitioner, | ) ) | Consolidated with: No. 26-1001 |
| v. | ) ) | No. 26-1002 No. 26-1003 |
| Federal Communications Commission and United States of America, | ) ) ) ) | No. 26-1012 |
| Respondents. | ) | |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 27(a)(4), Network Communications International Corporation ("NCIC") makes the following disclosures:

1. Network Communications International Corporation is a for-profit corporation headquartered in Longview, Texas.

2. There is no corporation that owns 10% or more of NCIC's stock.

February 6, 2026                           /s/  Lee G. Petro
                                           Lee G. Petro

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United Church of Christ Media Justice Ministry, Inc., | ) ) ) | No. 25-1280 |
| Petitioner, | ) ) | Consolidated with: No. 26-1001 |
| v. | ) ) | No. 26-1002 No. 26-1003 |
| Federal Communications Commission and United States of America, | ) ) ) ) | No. 26-1012 |
| Respondents. | ) | |

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rules 27(a)(4), NCIC Communications International Corporation submits the following Certificate of Parties, Rulings, and Related Cases.

1. **Parties**

    a. Petitioners

The petitioner in Case No. 25-1280 is the United Church of Christ Media Justice Ministry, Inc. The petitioner in Case No. 26-1001 is Direct Action for Rights and Equality. The petitioner in Case No. 26-1002 is Pennsylvania Prison Society. The petitioner in Case No. 26-1003

1

is Network Communications International Corporation. The petitioner in Case No. 26-1012 is Criminal Justice Reform Clinic.

Dickinson Wright, PLLC (through Glenn S. Richards, Phillip J. DeRosier, and Lee G. Petro) are counsel to Network Communications International Corporation.

b. Respondents

The respondents in each case are the Federal Communications Commission and the United States of America.

c. Intervenors

Securus Technologies, LLC; Direct Action for Rights and Equality; Pennsylvania Prison Society; United Church of Christ Media Justice Ministry, Inc.; and the National Sheriffs' Association have all filed motions to intervene.

d. Amici

None at present.

2. **Ruling Under Review**

Petitioners seek review of the following order issued by the Federal Communications Commission: *In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed*

2

*Act*, Report and Order, Order on Reconsideration, and Further Notice of Proposed Rulemaking, WC Docket Nos. 23-62 & 12-375, FCC 25-75 (rel. Nov. 6, 2025).

3. **Related Case**

There is an earlier order by Respondent Federal Communications Commission, *In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, 39 FCC Rcd 7647 (2024), in the same agency rulemaking dockets, WC Docket Nos. 23-62 & 12-375. Challenges to the earlier order have been consolidated and remain pending in the First Circuit. *See In re MCP 191*, No. 24-8028 (1st Cir.).

| | |
|---|---|
| February 6, 2026 | /s/  Lee G. Petro<br>Lee G. Petro |