IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| UNITED CHURCH OF CHRIST MEDIA JUSTICE MINISTRY, INC.,<br><br>*Petitioner*,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION and UNITED STATES,<br><br>*Respondents*. | No. 25-1280 (consolidated with 26-1001, 26-1002, 26-1003, 26-1012) |

**REPLY IN SUPPORT OF MOTION TO TRANSFER**

This Court should exercise its discretion under 28 U.S.C. § 2112(a)(5) to transfer these cases to the First Circuit. Only a single party—Network Communications International Corporation ("NCIC")—has opposed Direct Action for Rights and Equality's ("DARE's") transfer motion, but its arguments are unpersuasive. The First Circuit is already considering challenges to the 2024 Order from nearly all of the same parties, and the 2025 Order and Order on Reconsideration challenged here expressly maintains the same regulatory framework and data

1

categories as the 2024 Order.[1] Thus, the issues raised in the cases currently before this Court will unquestionably overlap significantly with the issues already before the First Circuit—as NCIC's own statement of issues in this Court confirms. Moreover, the First Circuit has noted its "familiarity" with that framework and is already set to receive supplemental briefing regarding the effect of the 2025 Order and Order on Reconsideration. In these circumstances, discretionary transfer to the First Circuit advances judicial economy and the convenience of the parties under this Court's precedent. The transfer motion should be granted.

## ARGUMENT

As explained in the transfer motion (at 7-12), this Court should transfer these cases to the First Circuit under 28 U.S.C. § 2112(a)(5) for four reasons: (1) the 2025 and 2024 orders share the same regulatory framework and a set of overlapping issues; (2) the challenges to the 2024 Order remain pending in the First Circuit, and parallel briefing would duplicate what the First Circuit has already set in motion by requesting supplemental briefing on the 2025 Order and Order on Reconsideration;

---

[1] *See In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, Clarification and Waiver, and Further Notice of Proposed Rulemaking, 39 FCC Rcd 7647 (2024) ("2024 Order"); *See In re Incarcerated People's Communications Services; Implementation of the Martha Wright-Reed Act*, Report and Order, Order on Reconsideration, and Further Notice of Proposed Rulemaking, WC Docket Nos. 23-62 & 12-375, FCC 25-75 (rel. Nov. 6, 2025) ("2025 Order and Order on Reconsideration").

2

(3) the First Circuit has unique familiarity with the recently enacted Martha Wright-Reed Act (the "Act"), as well as the complex statutory and regulatory background in the case, a factor that deserves "considerable weight," *Eastern Air Lines, Inc. v. CAB*, 354 F.2d 507, 510 (D.C. Cir. 1965); and (4) transfer would promote the convenience of the parties, as nearly all the same parties are already before the First Circuit. NCIC's opposition does not meaningfully contest any of these reasons:

    1.  NCIC primarily argues that transfer to the First Circuit would somehow deprive NCIC of its right to "full judicial review." Opp. 7. But the only question here is *which* court will receive full merits briefing from NCIC and the other parties challenging the 2025 Order and Order on Reconsideration. To be sure, after receiving such briefing, the First Circuit may resolve both sets of cases together. But that result is precisely what avoids "conflicting" judgments and achieves the benefits of discretionary transfer. *Midwest Television, Inc. v. FCC*, 364 F.2d 674, 676 (D.C. Cir. 1966). NCIC nowhere explains how its choice to file a petition for reconsideration before the agency somehow entitles it to bypass Congress' choice to confer discretionary authority on this Court to transfer cases "[f]or the convenience of the parties in the interest of justice." 28 U.S.C. § 2112(a)(5).[2]

---

[2] Part of the confusion may stem from NCIC's apparent belief that DARE is relying on the mandatory transfer language in 28 U.S.C. § 2112(a)(5), which governs when two petitions challenge the "same order." 28 U.S.C. § 2112(a)(5). But DARE's transfer motion instead relies on this Court's discretionary authority.

3

Along similar lines, NCIC incorrectly contends that transfer to the First Circuit is not justified because the 2025 Order and Order on Reconsideration may have mooted the First Circuit case. Opp. 5-7. But no party, including the Federal Communications Commission and the United States, has contended that the entire case currently before the First Circuit is moot.[3] And it plainly is not: many central issues in that case (including the Commission's authority to incorporate the "used and useful" rate-setting framework, prohibit site commissions, and prohibit separate ancillary fees) were not revisited in the 2025 Order and Order on Reconsideration and therefore remain indisputably live.

2. NCIC next suggests that transfer is not warranted because the 2025 Order and Order on Reconsideration "fundamentally changed the rate-setting methodology," adopted "a significantly different rate-setting methodology," and employed a "fundamentally different approach to regulating the IPCS Industry." Opp. 4, 9, 10. But the 2025 Order and Order on Reconsideration itself states that its "regulatory framework" was "largely established" through the 2024 Order and that its modifications operate within "the same ratesetting methodology." 2025 Order and Order on Reconsideration ¶¶ 1, 54. The 2025 Order and Order on Reconsideration further confirms that the "framework remains unchanged," and it

---

[3] *See* Letter by Respondent Federal Communications Commission, *In re: MCP 191*, No. 24-8028 (D.C. Cir. Dec. 5, 2025), Entry ID: 6770453.

describes a "stable regulatory framework" carried forward from the 2024 Order. *Id.* ¶ 54. Consistent with these statements, the 2025 Order and Order on Reconsideration relies on the same 2023 Mandatory Data Collection and record evidence to calculate rate caps "[a]s the Commission did in the *2024 IPCS Order*," *id.*, and its revisions to rate caps "continue to be based on the used and useful framework" from the 2024 Order, *id.* ¶ 57.

In any case, NCIC cannot plausibly contest that many of the issues are likely to overlap across the two cases. For example, DARE, the Pennsylvania Prison Society, and United Church of Christ Media Justice Ministry, Inc. intend to raise challenges to the 2025 Order and Order on Reconsideration's treatment of safety and security costs and facility costs, both of which are at issue in the First Circuit case as well. *See, e.g.*, Statement of Issues at 1, *Direct Action for Rights & Equality v. FCC*, No. 26-1001 (D.C. Cir. Feb. 11, 2026); Statement of Issues at 1, *Pa. Prison Society v. FCC*, No. 26-1002 (D.C. Cir. Feb. 7, 2026); Statement of Issues at 1, *United Church of Christ Media Justice Ministry, Inc. v. FCC*, No. 25-1280 (D.C. Cir. Feb. 11, 2026). Similarly, NCIC's statement of issues makes clear that it intends to seek review of many issues that remain live in the First Circuit, including the lawfulness of the Commission's methodology and the Commission's continued prohibition of site commissions and certain fees. *See* Statement of Issues at 2 (issues 1-4), *Network Commc'ns Int'l Corp. v. FCC*, No. 26-1003 (D.C. Cir. Feb. 11, 2026).

5

Thus, contrary to NCIC's characterizations, the 2025 and 2024 orders are not "fundamentally different," Opp. 10, such that simultaneous review in two distinct courts advances the interest of justice.

3. NCIC also unsuccessfully seeks to distinguish this Court's precedent. For instance, NCIC argues that *Midwest Television v. FCC* involved only "sequential orders" where the second order broadened, but did not reconsider, the first order. Opp. 8. But that distinction was not the basis for *Midwest Television*'s holding: instead, *Midwest Television* held that even when "the issues in the cases are not completely identical," it does not promote "sound judicial administration" for two courts to separately review "closely related agency proceedings." *Midwest Television*, 364 F.2d at 675. The matters before the First Circuit and before this Court clearly concern "closely related agency proceedings" given that the 2024 and 2025 orders arose from essentially the same administrative record and same dockets. That holding squarely governs the situation here.

NCIC similarly misreads *ACLU v. FCC* by emphasizing that the case contemplates unified review of closely related matters only "where appropriate." Opp. 8 (emphasis omitted). But NCIC never explains why that standard is not met here. After all, *ACLU* supported transfer when two orders were "issued during the course of the same proceeding" and "reviewed on the same record," as is the case here, even when "the particular matter of the two petitions [was] not the same."

6

*ACLU v. FCC*, 486 F.2d 411, 414 (D.C. Cir. 1973).  To be sure, "docket labels and conceptual overlap do not control the § 2112(a) analysis," Opp. 9, but both *Midwest Television* and *ACLU* make clear that the existence of related "proceedings" considering the "same record" are central factors in assessing motions to transfer.

  4. Next, NCIC unsuccessfully seeks to dispute the First Circuit's unique familiarity with the statutory scheme at issue.  But the fact remains that the First Circuit is the only court that has considered the Act and the Commission's implementing framework.  NCIC responds that if familiarity alone justified transfer, then "the first court to hear a case in a new regulatory field could insist on perpetual jurisdiction over every subsequent rule and reconsideration rule."  Opp. 11.  Yet DARE's argument is far more modest.  DARE is not arguing that the First Circuit should retain jurisdiction over all future cases under the Act, only that transfer is warranted here where the First Circuit is still considering a closely related order promulgated pursuant to the same statutory scheme issued within 15 months of each other based on the same record.

  5. NCIC also argues in general fashion that this Court "has substantially more experience in reviewing appeals of federal agency rulemaking orders."  Opp. 11.  But that general experience cannot be dispositive under 28 U.S.C. § 2112(a)(5).  If it were, then every other court in the country would consistently have reason to transfer every challenge to agency action to this Court, which is plainly not the

7

standard Congress intended for discretionary transfer. Indeed, the Court in *Midwest Television* made explicit that discretionary transfer was warranted "notwithstanding [the D.C. Circuit's] familiarity with the general area." 364 F.2d at 675. On the specific facts surrounding transfer here, the First Circuit's stated "familiar[ity]" with the issues, its status as the only court to consider the relevant statutory framework, and its ongoing consideration of those issues in a pending case all point in favor of transfer. *In re MCP 191*, 158 F.4th 294, 303 (1st Cir. 2025).

      6. Finally, NCIC contests whether transfer to the First Circuit would serve the convenience of the parties. Opp. 12-13. But NCIC primarily relies on considerations—such as the location of counsel—that are obsolete given modern technology.[4] Nearly all of the parties are already before the First Circuit challenging a closely related order. Consolidating these proceedings in a single court would permit all of those parties to streamline briefing in reliance on the First Circuit's familiarity with the prior order.

---

[4] NCIC also incorrectly asserts that, apart from the Criminal Justice Reform Clinic, all parties to this proceeding "are located in the Washington, D.C. area," Opp. 12, but the Pennsylvania Prison Society is based in Philadelphia, DARE is based in Providence, and United Church of Christ Media Justice Ministry's counsel is in California.

## CONCLUSION

For the foregoing reasons, this Court should transfer these consolidated cases to the First Circuit.

Dated: February 13, 2026

Respectfully submitted,

*/s/ Jessica Ring Amunson*
Jessica Ring Amunson
Arjun R. Ramamurti
Ruby C. Giaquinto
Kevin A. Zhang
Jenner & Block LLP
1099 New York Ave, N.W. Suite 900
Washington, D.C. 20001
(202) 639-6000
jamunson@jenner.com
aramamurti@jenner.com
rgiaquinto@jenner.com
kzhang@jenner.com

*Counsel for Direct Action for Rights and Equality*

**CERTIFICATE OF COMPLIANCE**

Under Rules 27(d)(2)(C) and 32(g) of the Federal Rules of Appellate Procedure, I certify this motion complies with the length limits set forth Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 1,818 words, as counted by Microsoft Word, excluding the items that may be exempted under Federal Rule of Appellate Procedure 27(a)(2)(B).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman font.

Dated: February 13, 2026            */s/ Jessica Ring Amunson*
                                    Jessica Ring Amunson

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: February 13, 2026                    */s/ Jessica Ring Amunson*
                                            Jessica Ring Amunson